# EXHIBIT A

# COMMONWEALTH OF MASSACHUSETTS
## Office of Consumer Affairs and Business Regulation
### DIVISION OF INSURANCE
1000 Washington Street • Suite 810 • Boston, MA 02118-6200
(617) 521-7794 • FAX (617) 521-7475
http://www.mass.gov/doi

CHARLES D. BAKER
GOVERNOR

KARYN E. POLITO
LIEUTENANT GOVERNOR

JAY ASH
SECRETARY OF HOUSING AND
ECONOMIC DEVELOPMENT

JOHN C. CHAPMAN
UNDERSECRETARY

GARY D. ANDERSON
ACTING COMMISSIONER OF INSURANCE

March 4, 2015    **HSB**
**RECEIVED**

HARTFORD STEAM BOILER INSPECTION & INSURANCE COMPANY MAR 06 2015
One State Street
Hartford, CT 06102

**LAW DEPT**

Re: Service of Process

Dear Sir or Madam:

Enclosed you will find legal process which was served upon the Commissioner of Insurance, in his capacity as attorney and registered agent for, Service of Process* for a foreign insurance company, as provided for in Massachusetts General Laws, Chapter 175, §151(3) and §154.

* <u>Please note</u>: **All future inquiry or correspondence should be directed to the attention of the attorney of record of the enclosed documents.**

Sincerely,

Steven Zavackis
Legal Division
(617) 521-7432

Enclosure(s)

PLYMOUTH, ss.

SUPERIOR COURT DEPARTMENT OF
THE TRIAL COURT OF THE
COMMONWEALTH
CIVIL ACTION NO.  2015-00135-B

Hull Permanent Sewer Commission,
Town of Hull
.................................................., Plaintiff(s)

vs.

Hartford Steam Boiler Inspection
and Insurance Company
.................................................., Defendant(s)

## SUMMONS

To the above-named defendant:

    You are hereby summoned and required to serve upon Anna M. Piazza, Anderson Kill P.C. plaintiff
attorney, whose address is 1251 Ave. of the Americas, NY, NY 10020 ......................., an answer to the complaint
which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the
day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the
complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at
Plymouth either before service upon plaintiff ' attorney or within a reasonable time thereafter.

    Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which
you may have against the plaintiff       which arises out of the transaction or occurrence that is the subject
matter of the plaintiff   claim or you will thereafter be barred from making such claim in any other action.

    Witness, Barbara J. Rouse Esquire, at Plymouth the Nineteenth ..........................day of
February ............................., in the year of our Lord Two thousand and Fifteen .............. .

Robert S. Creedon, Jr.
CLERK OF COURTS

**NOTES**
1.  This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2.  When more than one defendant is involved, the names of all defendants should appear in the caption.
    If a separate summons is used for each defendant, each should be addressed to the particular
    defendant.
3.  To the plaintiff's attorney: please circle type of action involved-Tort-Motor Vehicle Tort-Contract-
    Equitable Relief-Other.

## PROOF OF SERVICE OF PROCESS
I hereby certify and return that on .......March....4..,..2015.., 200 , I served a copy of the within summons
together with a copy with a copy of the complaint in this action, upon the within-named defendant   , in the
following manner(See Mass. R. Civ. P. 4(d)(1-5):..........................................................................
By First Class Mail to Hartford Steam Boiler Inspection &
Insurance Company at One State Street, Hartford, CT 06102

Dated: 3/4/15 , 20\_\_.

Steven Zavuckis

N.B.   TO PROCESS SERVER:-
       PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN THIS BOX ON THE
ORIGINAL AND ON COPY SERVED ON DEFENDANT.

RECEIVED
MAR - 4 2015        , 200
DIVISION OF INSURANCE
LEGAL DIVISION

attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's office at Plymouth.

| CIVIL ACTION COVER SHEET | TRIAL COURT OF MASSACHUSETTS<br>SUPERIOR COURT DEPARTMENT<br>COUNTY OF   PLYMOUTH | DOCKET NO. _15- 135_ |
|---|---|---|

| PLAINTIFF(S) | DEFENDANT(S) |
|---|---|
| Hull Permanent Sewer Commission;<br>Town of Hull | Hartford Steam Boiler Inspection and<br>Insurance Company |

| Plaintiff Atty | Anderson Kill P.C. - *Anna M. Piazza* | Type Defendant's Attorney Name |
|---|---|---|

| | | Defendant Atty | Morrison Mahoney LLP |
|---|---|---|---|
| Address | 1251 Avenue of the Americas | Address | 250 Summer Street |
| City | New York | State NY | Zip Code 10020 | City | Boston | State MA | Zip Code 02210 |
| Tel. | +1 (212) 278-1000 | BBO# 658909 | | | |

**TYPE OF ACTION AND TRACK DESIGNATION** (See reverse side)

| CODE NO. | TYPE OF ACTION (specify)     TRACK | IS THIS A JURY CASE? |
|---|---|---|
| A99 Other (specify ) - Fast Track | | [ ] Yes   [ ] No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine
money damages.  For this form, disregard double or treble damage claims; indicate single damages only.

## TORT CLAIMS
(Attach additional sheets as necessary)

A.  Documented medical expenses to date:
1.  Total hospital expenses                                          $_____
2.  Total doctor expenses                                           $_____
3.  Total chiropractic expenses                                     $_____
4.  Total physical therapy expenses                                 $_____
5.  Total other expenses (describe)                                 $_____
                                                    Subtotal         $_____
B.  Documented lost wages and compensation to date                  $_____
C.  Documented property damages to date                             $_____
D.  Reasonably anticipated future medical expenses                  $_____
E.  Reasonably anticipated lost wages and compensation to date      $_____
F.  Other documented items of damages (describe)                    $_____

G.  Brief description of plaintiff's injury, including nature and extent of injury (describe)

                                                    Total $_____

## CONTRACT CLAIMS
(Attach additional sheets as necessary)
Provide a detailed description of claim(s):

| This is a breach of contract action stemming from property damage due to a mechanical<br>breakdown at a site insured under an equipment breakdown insurance policy. Defendant has<br>denied Plaintiffs' covered claim for insurance coverage. | TOTAL | $~4.2~<br>*million* |
|---|---|---|

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR
COURT DEPARTMENT

I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC
Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the
advantages and disadvantages of the various methods."

Signature of Attorney of Record _Anna M. Piazza_                    Date: _2/10/15_

A.O.S.C. 3-2007

## CIVIL ACTION COVER SHEET INSTRUCTIONS
### SELECT CATEGORY THAT BEST DESCRIBES YOUR CASE

**\* CONTRACTS**

| | | |
|---|---|---|
| A01 | Services, Labor and Materials | F) |
| A02 | Goods Sold and Delivered | (F) |
| A03 | Commercial Paper | (F) |
| A08 | Sale or Lease of Real Estate | (F) |
| A12 | Construction Dispute | (A) |
| A99 | Other (Specify) | (F) |
| E03 | Claims against Commonwealth or Municipality | (A) |

**\*TORT**

| | | |
|---|---|---|
| B03 | Motor Vehicle Negligence personal injury/property damage | (F) |
| B04 | Other Negligence- personal injury/property damage | (F) |
| B05 | Products Liability | (A) |
| B06 | Malpractice-MedicaL | (A) |
| B07 | Malpractice-Other (Specify) | (A) |
| B08 | Wrongful Death, G.L. c.229, s.2A | (A) |
| B15 | Defamation (Libel-Slander) | (A) |
| B19 | Asbestos | (A) |
| B20 | Personal Injury- slip & fall | (F) |
| B21 | Environmental | (F) |
| B22 | Employment Discrimination | (F) |
| B99 | Other (Specify) | (F) |
| E03 | Claims against Commonwealth | (A) |

**\* REAL PROPERTY**

| | | |
|---|---|---|
| C01 | Land Taking (eminent domain) | (F) |
| C02 | Zoning Appeal, G.L. c.40A | (F) |
| C03 | Dispute concerning title | (F) |
| C04 | Foreclosure of mortgage | (X) |
| C05 | Condominium Lien & Charges | (X) |
| C99 | Other (Specify) | (F) |
| E03 | Claims against Commonwealth or Municipality | (A) |

**EQUITABLE REMEDIES**

| | | |
|---|---|---|
| D01 | Specific Performance of Contract | (A) |
| D02 | Reach and Apply | (F) |
| D06 | Contribution or Indemnification | (F) |
| D07 | Imposition of a Trust | (A) |
| D08 | Minority Stockholder's Suit | (A) |
| D10 | Accounting | (A) |
| D12 | Dissolution of Partnership | (F) |
| D13 | Declaratory Judgment G.L. c. 231A | (A) |
| D99 | Other (Specify) | (F) |

**MISCELLANEOUS**

| | | |
|---|---|---|
| E02 | Appeal from Administrative Agency G.L. c. 30A | (X) |
| E03 | Claims against Commonwealth or Municipality | (A) |
| E05 | Confirmation of Arbitration Awards | (X) |
| E07 | G.L. c.112, s.12S (Mary Moe) | (X) |
| E08 | Appointment of Receiver | (X) |
| E09 | General Contractor bond, G.L. c. 149, ss. 29, 29a | (A) |
| E11 | Workers Compensation | (X) |
| E12 | G.L.c.123A, s.12 (SDP Commitment) | (X) |
| E14 | G.L. c. 123A, s. 9 (SDP Petition) | |
| E15 | Abuse Petition, G. L. c. 209A | (X) |
| E16 | Auto Surcharge Appeal | (X) |
| E17 | Civil Rights Act, G.L. c.12, s. 11H | (A) |
| E18 | Foreign Discovery Proceeding | (X) |
| E19 | Sex Offender Registry G.L. c. 178M, s. 6 | (X) |
| E21 | Protection from Harassment c 258E | (X) |
| E25 | Plural Registry (Asbestos cases) | |
| E95 | \*\*Forfeiture G.L. c. 94C, s. 47 | (F) |
| E96 | Prisoner Cases | (F) |
| E97 | Prisoner Habeas Corpus | (X) |
| E99 | Other (Specify) | (X) |

**\*Claims against the Commonwealth or a municipality are type E03, Average Track, cases.**
**\*\*Claims filed by the Commonwealth pursuant to G L c 94C, s 47 Forfeiture cases are type E95, Fast track.**

TRANSFER YOUR SELECTION TO THE FACE SHEET.

EXAMPLE:

| CODE NO. | TYPE OF ACTION (SPECIFY) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | (F) | [ X ] Yes    [  ] |

### SUPERIOR COURT RULE 29

DUTY OF THE PLAINTIFF. The plaintiff or his/her counsel shall set forth, on the face sheet (or attach additional sheets as necessary), a statement specifying in full and itemized detail the facts upon which the plaintiff then relies as constituting money damages. A copy of such civil action cover sheet, including the statement as to the damages, shall be served on the defendant together with the complaint. If a statement of money damages, where appropriate is not filed, the Clerk-Magistrate shall transfer the action as provided in Rule 29(5)(C).

DUTY OF THE DEFENDANT. Should the defendant believe the statement of damages filed by the plaintiff in any respect inadequate, he or his counsel may file with the answer a statement specifying in reasonable detail the potential damages which may result should the plaintiff prevail. Such statement, if any, shall be served with the answer.

A CIVIL ACTION COVER SHEET MUST BE FILED WITH EACH COMPLAINT.

FAILURE TO COMPLETE THIS COVER SHEET THOROUGHLY AND ACCURATELY
MAY RESULT IN DISMISSAL OF THIS ACTION.

# Commonwealth of Massachusetts
## County of Plymouth
## The Superior Court

Plymouth, ss.

CIVIL DOCKET # **PLCV2015-00135-B**

**Courtroom Superior Court Courtroom 3rd fl (52 Obery St)**

RE: **Hull Permanent Sewer Commision et al v Hartford Steam Boiler Inspection and Insurance Company**

TO:

Anna M. Piazza, Esquire
Anderson Kill & Olick, P. C.
1251 Avenue of the Americas
New York, NY 10020

### SCHEDULING ORDER FOR  F  TRACK

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated, and case shall be resolved and judgment shall issue **12/02/2016.**

| STAGES OF LITIGATION | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | 05/12/2015 | 05/12/2015 | |
| Response to the complaint filed (also see MRCP 12) | | 06/11/2015 | |
| All motions under MRCP 12, 19, and 20 | 06/11/2015 | 07/11/2015 | 08/10/2015 |
| All motions under MRCP 15 | 06/11/2015 | 07/11/2015 | 08/10/2015 |
| All discovery requests and depositions served and non-expert depositions completed | 12/08/2015 | | |
| All motions under MRCP 56 | 01/07/2016 | 02/06/2016 | |
| Final pre-trial conference held and/or firm trial date set | | | 06/05/2016 |
| Case shall be resolved and judgment shall issue by **12/02/2016** | | | 12/02/2016 |

The final pre-trial deadline is <u>not the scheduled date of the conference.</u>
You will be notified of that date at a later time.
Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.

Dated: 02/11/2015

Robert S. Creedon, Jr.
Clerk of the Court

Telephone: (508) 747-8565

## COMMONWEALTH OF MASSACHUSETTS

Plymouth, SS

SUPERIOR COURT

CIVIL ACTION NO. _15- 135_

---

HULL PERMANENT SEWER
COMMISSION and TOWN OF HULL,

          Plaintiffs,

vs.

HARTFORD STEAM BOILER
INSPECTION AND INSURANCE
COMPANY,

          Defendant.

**COMPLAINT**

AND JURY TRIAL DEMANDED

---

Plaintiffs, Hull Permanent Sewer Commission and Town of Hull (collectively "Hull"), by their undersigned attorneys, as and for their complaint against Defendant, Hartford Steam Boiler Inspection and Insurance Company ("HSB"), allege as follows:

### INTRODUCTION

1.     This action arises out of HSB's failure and refusal to honor its obligations under an insurance policy that it sold to Hull. HSB is liable to Hull for losses, including property damage, that Hull suffered as a result of an accident at the Waste Water Treatment Facility that Hull owns.

2.     Hull seeks all general, special, and consequential damages, attorneys' fees, pre- and post-judgment interest, and all penalties to which it is entitled under statute, civil, and common law.

1

nydocs1-1044740.1

## PARTIES

3.     Plaintiff Hull Permanent Sewer Commission, 1111 Nantasket Avenue, Hull, Plymouth County, Massachusetts 02043, oversees policy and major sewer upgrade projects and operates the Waste Water Treatment Facility for the Town of Hull in the County of Plymouth, Commonwealth of Massachusetts.

4.     Plaintiff Town of Hull, Municipal Building, 253 Atlantic Avenue, Hull, Plymouth County, Massachusetts 02043, is the local government entity that owns and operates with the Hull Permanent Sewer Commission the facility that is the subject of this action.

5.     Upon information and belief, Defendant Hartford Steam Boiler Inspection and Insurance Company, One State Street, P.O. Box 5024, Hartford, Connecticut 06102, is incorporated in the state of Connecticut and has its principal place of business in Hartford, Connecticut.

## JURISDICTION AND VENUE

6.     The Superior Court has original jurisdiction over this civil action pursuant to M.G.L. c. 212 and 223A.

7.     Venue is proper in this county pursuant to M.G.L. c. 223, § 1.

## BACKGROUND FACTS

### The Waste Water Treatment Facility

8.     Hull owns a Waste Water Treatment Facility located at 1111 Nantasket Avenue, Hull, Massachusetts 02045, which provides wastewater treatment and control services to more than ten-thousand people (the "Facility").

2

9.    The Facility accepts wastewater from the sewerage system of the Town of Hull, as well as from customers in the Towns of Hingham and Cohasset, and separates wastewater from treated water through a treatment process.

### The Incident

10.    On or about February 27, 2013, an incident involving mechanical breakdown of an influent water pump at the Facility caused the Facility to be unable to treat and process wastewater (the "Incident").

11.    As a result, partially treated wastewater emerged from the Facility's aerated grit chamber into other parts of the Facility.

12.    The partially treated wastewater came into contact with the Facility's equipment, including but not limited to communications, electrical, and mechanical systems and other components, resulting in massive damage.

13.    Hull worked expeditiously to restore wastewater treatment capabilities, including essential temporary measures and permanent repairs.

14.    To date, Hull has suffered damages in excess of $4.2 million in connection with the Facility's repair and restoration.  This amount includes costs associated with repairing the Facility's electrical, communications, and sensory equipment; the rebuilding of mechanical equipment such as motors, pumps, and transfer switches; and expenses incurred in implementing short-term solutions for continued wastewater treatment operations, such as the costs associated with setting up a system for the emergency processing of wastewater and repairing other related damages.

3

**The Insurance Policy**

15.   Hull purchased from HSB an Equipment Breakdown insurance policy, Policy Number FBP4935156 with a policy period March 4, 2012 to March 4, 2013 (the "Policy"), attached hereto as Ex. A.

16.   The Policy obligates HSB to pay for loss due to an "accident" at the Facility. See Ex. A, at HSB006, HSB011.

17.   An "accident" is defined as "a fortuitous event that causes direct physical damage to 'covered equipment,'" including but not limited to "mechanical breakdown" or "bursting, cracking or splitting." See Ex. A, at HSB011.

18.   "Covered equipment" is defined to include Hull's property at the Facility, such as "equipment that generates, transmits or utilizes energy, including electronic communications and data processing equipment," or "equipment which, during normal usage, operates under vacuum or pressure, other than the weight of its contents." See Ex. A, at HSB011.

19.   The Policy also obligates HSB to provide coverage for, among other things, property damage, extra expense, expediting expenses, hazardous substances, and service interruption. See Ex. A, at HSB011-HSB014.

**HSB's Denial of Coverage under the Policy**

20.   Immediately following the Incident, Hull provided HSB with timely notice of the Incident.

21.   Despite timely notice and acknowledgment of the covered loss, HSB has failed to make any payments under the Policy.

4

22.     Hull has fully satisfied all the conditions precedent under the insurance HSB sold and has satisfied all other obligations thereunder.

23.     Hull has paid all necessary premiums for the Policy.

24.     As a result of HSB's breach of its contractual obligations, Hull has sustained damages in excess of $4.2 million.

## CAUSE OF ACTION FOR BREACH OF CONTRACT

25.     Hull repeats and re-alleges the allegations of paragraphs 1 through 24 as if fully set forth herein.

26.     The Policy is, and at all times relevant to this dispute was, a valid contract between Hull and HSB.

27.     Hull has performed all of its duties consistent with the terms and conditions of the Policy, and Hull has paid all premiums.

28.     HSB breached its contractual obligations under the Policy by failing to honor its terms and wrongly refusing to pay promptly Hull's claim in connection with the Incident.

29.     Hull has sustained damages as a result of HSB's breach.

30.     By reason of HSB's breach of the Policy, HSB is liable to Hull for damages, including but not limited to compensatory and consequential damages, and reasonable attorneys' fees and expenses in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Hull prays that the Court enter judgment in favor of Hull and against HSB in an amount to be determined by the Court, including pre- and post-

5

judgment interest, costs, attorneys' fees, and any other relief as this Court may deem

just.

## DEMAND FOR JURY TRIAL

Hull hereby demands a jury trial as to all issues in this action.

Dated:   February 10, 2015

By: _Anna M. Piazza_
      Anna M. Piazza, Esq. (BBO # 658909)

ANDERSON KILL P.C.
1251 Avenue of the Americas
New York, NY  10020
Telephone:  212-278-1000
apiazza@andersonkill.com
fharckham@andersonkill.com
mgilinsky@andersonkill.com

James B. Lampke, Esq. (BBO # 284280)
Town Counsel-Town of Hull
115 North Street, Suite 3
Hingham, MA 02043
Telephone:  781-749-9922
jlampke@town.hull.ma.us

Attorneys for Plaintiffs
Hull Permanent Sewer Commission
Town of Hull

6

# Exhibit A



# **HSB** Freestyle

Your equipment breakdown policy.

Boiler



Think Ahead

HSB001

## Engineering services with Insurance

Thank you for choosing Hartford Steam Boiler for your Equipment Breakdown Insurance. The following additional services are part of our insurance program.

Jurisdictional inspections: a built-in benefit. Most states and municipalities require periodic inspections for boilers and pressure vessels. If you have equipment that requires an inspection, Hartford Steam Boiler's professionals can perform it for you as part of this insurance program.

Hot-line to inspection service. To schedule an inspection, call our inspection Hot-line at 1-800-333-4677 between 7:00 a.m. to 7:00 p.m. EST, Monday to Friday. Have your Equipment Breakdown policy number available when you call.

Confused about inspections? You're not alone. Many people find jurisdictional inspection codes and requirements confusing. For information about the requirements in your area call the HSB Inspection Hot-line at 1-800-333-4677.

Loss prevention information. Our inspection Hot-line staff and field inspectors can answer technical questions to help you maintain equipment. Proper maintenance can help you prevent failures and bring other benefits such as greater energy efficiency and reliability.

Technical information. Hartford Steam Boiler offers an automated electronic library of ready-to-order documents. These cover: equipment maintenance tips, loss prevention measures, inspection requirements, and more. Visit this page on our website: http://www.hsb.com/information.asp?id=182.

## Our business is to get you back in business

We're committed to making the claims process as fast and painless as possible. Here's how we can help:

Notify us of a claim as soon as possible. This will further expedite the process. If you need to make immediate repairs, please make an effort to save the damaged parts.

We offer a repair firm referral service. Our claims adjusters have access to a global network of repair vendors and parts suppliers. We can help you find firms that deliver prompt service and fair prices - and who stand behind their quality work.

For a business income claim, provide indications of activity both before and after the loss. Also, keep records of extra expenses during the interruption period. We want to get you back in business quickly; this information will help.

Call or fax us 24 hours a day. Report equipment accidents by phone or fax and one of our claim adjusters will contact you as soon as possible.

Claim Phone          1-888-472-5677 (HSB-LOSS)

Claim Fax            1-888-329-5677 (FAX-LOSS)

## Policy service requests and changes

Policy services such as endorsements, changes, premium finance correspondence and inquiries should be directed to our policy service unit:

Hartford Steam Boiler
Policy Service Unit
Bay Colony Executive Park
595 East Swedesford Rd.
Wayne, PA 19087

Policy service phone:    1-800-472-1866
Policy service fax:      1-800-296-4084



**Mixed Sources**
FSC



Think Ahead

COM-118 (Rev. 9/10)

# HSB FREESTYLE®
## Common Policy Renewal Declarations

| Presented by: | Hub International New England |
| --- | --- |
| | (978)657-5100 |



**The Hartford Steam Boiler Inspection and Insurance Company**

**Think Ahead®**

To report a claim - Call 1-888-HSB-LOSS (472-5677);   Fax 1-888-329-5677.
For questions and information about your policy — Call 1-800-472-1866.

Issue Date........... 02/08/2012

Policy Number ......................... FBP4935156

Named Insured:
Hull Permanent Sewer Commission

Mailing Address........................ 1111 Nantasket Ave
Hull, MA  02045

Policy Period............................. 03/04/2012 to 03/04/2013 at 12:01 A.M.
Standard Time at the above Mailing Address

Annual Premium ...................................................................$8,171.00
Premium including Taxes and Surcharges..............................$8,171.00

Notices:   Your policy may contain a Notice to Policyholders.   State-specific notices are contained in the applicable 'State Changes' documents, attached at the end of your policy.   Other notices may appear at the beginning of your policy.

This policy is made up of these Declarations and the following forms:

| Description | | Form No. | |
| --- | --- | --- | --- |
| Equipment Breakdown Coverage Part Declarations No. 1 | DFB | BBCDEC | 02/2011 |
| Schedule of Locations | EFB | SCHLOCS | 01/1998 |
| Agreement and Conditions | | 6670 | 10/2011 |

HSB003

# Common Policy Renewal Declarations (Continued)

Named Insured:
Hull Permanent Sewer Commission

Policy Number ............... PBP4935156

Effective Date ............... 03/04/2012
Issue Date....................... 02/08/2012

| Description | Form No. | | |
|---|---|---|---|
| Equipment Breakdown Coverage Form | | 6671 | 10/2002 |
| HSB Green Equipment Breakdown Endorsement | FBP | GREEN | 03/2011 |
| Terrorism Risk Insurance Act Disclosure | BND | BBTRIA | 01/2008 |
| Massachusetts Changes | FBP | MA | 01/2010 |

HSB004

# Equipment Breakdown Coverage Part Declarations No.  1

Named Insured:
Hull Permanent Sewer Commission

Policy Number ................ FBP4935156

Effective Date ................ 03/04/2012
Issue Date........................ 02/08/2012

These coverages apply to any location listed on the Schedule of Locations for Equipment Breakdown Coverage Part Declarations No. 1.

| Coverages | Limits |
|---|---|
| Equipment Breakdown Limit............................................. | $13,404,709 |
| Property Damage................................................... | Included |
| Off Premises Property Damage.................................... | $25,000 |
| Business Income..................................................... | Excluded |
| Extra Expense....................................................... | $100,000 |
| Service Interruption................................................. | Excluded |
| Contingent Business Income...................................... | Excluded |
| Perishable Goods.................................................... | Excluded |
| Data Restoration..................................................... | $100,000 |
| Demolition............................................................ | $100,000 |
| Ordinance or Law................................................... | $100,000 |
| Expediting Expense................................................. | $100,000 |
| Hazardous Substances............................................. | $100,000 |
| Newly Acquired Locations.......................................... | $250,000 |
| Green................................................................... | $25,000 |

## Deductibles

| | |
|---|---|
| Direct.................................................................. | $2,500.00 |
| Except Motors,Pumps&Deep Well Pump Units.... | $25.00 per HP, Minimum of $2,500.00 |
| Except ICE/Generator units ................................... | $40.00 per HP, Minimum of $10,000.00 |
| Indirect ............................................................... | $2,500.00 |

## Other Conditions

| | |
|---|---|
| Newly Acquired Locations | 90 Days |

'Covered property' does not include media used in trickle filters or other sewage processing equipment. This includes but is not limited to biological or plastic media.

# Schedule of Locations

Named Insured:
Hull Permanent Sewer Commission

Policy Number .............. FBP4935156

Effective Date ............... 03/04/2012
Issue Date ...................... 02/08/2012

| Location Number | Coverage Part Declarations Number | Location Address |
|---|---|---|
| 45001 | 1 | 1111 Nantasket Ave<br>Hull, MA 02045 |
| 45002 | 1 | George Washington Blvd<br>HULL, MA 02045 |
| 45003 | 1 | Atlantic Ave at Gun Rock<br>HULL, MA 02045 |
| 45004 | 1 | Valley Beach Rd<br>HULL, MA 02045 |
| 45005 | 1 | Marginal Rd<br>HULL, MA 02045 |
| 45006 | 1 | #9 Pumping Stn<br>Main St<br>HULL, MA 02045 |
| 45007 | 1 | Draper Ave & Front St<br>HULL, MA 02045 |
| 45010 | 1 | Playground<br>LSt Nantasket Ave<br>Hull, MA 02045 |

HSB006

# Agreement and Conditions



**Think Ahead**®

**The Hartford Steam Boiler Inspection and Insurance Company:
One State Street, Hartford, Connecticut 06102**

## Insuring Agreement

In return for payment of the premium and subject to all terms of the policy,
we agree with you to provide the insurance as stated in this policy.

In Witness Whereof, the Company identified on the Declarations has caused this policy
to be signed by its President and Corporate Secretary at Hartford, Connecticut.

Greg Barats
President and Chief Executive Officer

Nancy C. Onken
Corporate Secretary

Includes copyrighted material of Insurance Services Office, Inc., with its permission

6670  10/2011

Page 1 of 4

HSB007

# General Conditions

## I.  COMMON POLICY CONDITIONS

### A.  CANCELLATION

1.  The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2.  We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

    a.  10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    b.  30 days before the effective date of cancellation if we cancel for any other reason.

3.  We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4.  Notice of cancellation will state the effective date of cancellation.  The policy period will end on that date.

5.  If this policy is canceled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6.  If notice is mailed, proof of mailing will be sufficient proof of notice.

### B.  CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

### C.  EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

### D.  INSPECTIONS AND SURVEYS

1.  We have the right to:

    a.  Make inspections and surveys at any time;

    b.  Give you reports on the conditions we find; and

    c.  Recommend changes.

2.  We are not obligated to make any inspections, surveys, reports or recommendations and any such actions relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

    a.  Are safe or healthful; or

    b.  Comply with laws, regulations, codes or standards.

3.  Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

### E.  PREMIUMS

The first Named Insured shown in the Declarations:

1.  Is responsible for the payment of all premiums; and

2.  Will be the payee for any return premiums we pay.

### F.  TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

## II.  CALCULATION OF PREMIUM

The premium shown in the Declarations was

computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

## III.  REPORT OF VALUES

You must report insurable values to us at least once a year.

## IV.  ADJUSTMENT OF PREMIUM

A.  The premium charged at the inception of each policy year is an advance premium. When we receive updated insurable values from you or when we determine updated insurable values through an audit or claim adjustment, we will determine an adjusted premium for this insurance.

B.  If the adjusted premium is less than the advance premium, we will return the excess premium to you. Such excess premium will not exceed 75% of the advance premium.

C.  If the adjusted premium is greater than the advance premium, we will charge the additional premium based on your reports of value.

## V.  JOINT OR DISPUTED LOSS AGREEMENT

A.  This condition is intended to facilitate payment of insurance proceeds when:

1.  Both a commercial property policy and this equipment breakdown policy are in effect,

2.  Damage occurs to Covered Property that is insured by the commercial property policy and this equipment breakdown policy; and

3.  There is disagreement between the insurers as to whether there is coverage or as to the amount of the loss to be paid, if any, by each insurer under its own policies.

B.  The provisions of this condition apply only if all of the following requirements are met:

1.  The commercial property policy carried by the Named Insured, insuring the Covered Property, contains a similar provision at the time of the loss or damage, with substantially the same requirements, procedures and conditions as contained in this condition;

2.  There is a Joint Loss or Disputed Loss as defined below; and

3.  The total amount of the loss is agreed to by you, the commercial property insurer(s) and us.

C.  Joint Loss and Disputed Loss are defined as follows:

1.  Joint Loss means that there is damage to property that is Covered Property under both the commercial property policy and this policy and both the commercial property insurer(s) and we admit to some liability for payment under the respective policies.

2.  Disputed Loss means that there is damage to property that is Covered Property under both the commercial property policy and this policy and the commercial property insurer(s) and we agree that there is some liability under one policy or the other, but disagree about which policy is liable for the loss.

D.  If the requirements listed in paragraph B, above are satisfied, we and the commercial property insurer(s) will make payments to the extent, and in the manner, described as follows:

1.  We will pay, after your written request, the entire amount of loss that we have agreed as being covered, if any, by this equipment breakdown policy and one-half (1/2) the amount of the loss that is in disagreement.

2.  The commercial property insurer(s) will pay, after your written request, the entire amount of loss that they have agreed as being covered, if any, by the commercial property policy and one-half (1/2) the amount of loss that is in disagreement.

3.  Payments by the insurers of the amounts that are in disagreement, as described in paragraphs 1. and 2., do not alter, waive or surrender any rights of any insurer against any other with regard to the portion of the loss for which each insurer is liable.

4.  The amount in disagreement to be paid by us under this condition shall not exceed the amount payable under the equivalent loss agreement(s) of the commercial property policy.

5.  The amount to be paid under this condition shall not exceed the amount we would have paid had no commercial property policy been in effect at the time of loss. In no event will we pay more than the applicable

Equipment Breakdown Limit shown in the Declarations.

6. Acceptance by you of sums paid under this condition does not alter, waive or surrender any other rights against us.

E. Arbitration

1. The commercial property insurer(s) and we agree to submit our differences to arbitration within 90 days after payment of the loss under the terms of this condition.

2. You agree to cooperate with any arbitration procedures.

3. There will be three arbitrators: one will be appointed by us, and another will be appointed by the commercial property insurer(s). The two arbitrators will select a third arbitrator. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. A decision agreed to by two of the three arbitrators will be binding on both parties. Judgment on any award can be entered in any court that has jurisdiction.

F. Final Settlement Between Insurers

The insurer(s) found responsible for the greater percentage of the ultimate loss must return the excess contribution to the other insurer(s). In addition, the insurer(s) found responsible for the greater portion of the loss must pay liquidated damages to the other insurer(s) on the amount of the excess contribution of the other insurer(s). Liquidated damages are defined as interest from the date the insured invokes this agreement to the date the insurer(s) that contributed the excess amount is reimbursed. The interest is calculated at 1.5 times the highest prime rate from the money rates column of the Wall Street Journal during the period of the liquidated damages. Arbitration expenses are not a part of the excess contribution for which liquidated damages are calculated. Arbitration expenses will be apportioned between insurers on the same basis that the ultimate loss is apportioned.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

HSB010

# Equipment Breakdown Coverage Form

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties, and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance. Other words and phrases that appear in quotation marks have special meaning. Refer to Section G - DEFINITIONS. Examples are shown for illustrative purposes only and do not represent predicted or expected outcomes.

## A. COVERAGE

This Equipment Breakdown Coverage provides insurance for a Covered Cause of Loss as defined in A.1. below. In the event of a Covered Cause of Loss, we will pay for loss as described in A.2. below.

1. **Covered Cause of Loss - "Accident"**

   The Covered Cause of Loss for this Equipment Breakdown Coverage is an "accident." Without an "accident," there is no Equipment Breakdown Coverage.

   a. **"Accident"** means a fortuitous event that causes direct physical damage to "covered equipment." The event must be one of the following:

      (1) Mechanical breakdown, including rupture or bursting caused by centrifugal force;

      (2) Artificially generated electrical current, including electrical arcing, that damages electrical devices, appliances or wires;

      (3) Explosion, other than combustion explosion, of steam boilers, steam piping, steam engines or steam turbines;

      (4) An event inside steam boilers, steam pipes, steam engines or steam turbines that damages such equipment;

      (5) An event inside hot water boilers or other water heating equipment that damages such equipment; or

      (6) Bursting, cracking or splitting.

      "Accident" does not include any condition or event listed in Definition G.1.b.

   b. **"Covered Equipment"** means the following:

      (1) Unless specified otherwise in the Declarations:

         (a) Equipment that generates, transmits or utilizes energy, including electronic communications and data processing equipment; or

         (b) Equipment which, during normal usage, operates under vacuum or pressure, other than the weight of its contents.

      (2) Except as specifically provided for under Off Premises Property Damage, Service Interruption, Contingent Business Income and paragraph (2) of Perishable Goods, such equipment must be at a location described in the Declarations and must be owned or leased by you or operated under your control.

      "Covered equipment" does not include any property listed in Definition G.8.b.

2. **Coverages Provided**

   This section lists the coverages that may apply in the event of an "accident." Each coverage is subject to a specific limit as shown in the Declarations. See paragraph C.2. for details.

   These coverages apply only to the direct result of an "accident." For each coverage, we will pay only for that portion of the loss, damage or expense that is solely attributable to the "accident."

   a. **Property Damage**

      We will pay for physical damage to "covered property" that is at a location indicated in the Declarations at the time of the "accident."

   b. **Off Premises Property Damage**

      If you have transportable "covered equipment" that, at the time of the "accident," is within the Coverage Territory, but is not:

      (1) At a location indicated in the

Includes copyright material of Insurance Services Office, Inc. with its permission.

Declarations; or

    (2) At any other location owned or leased by you,

we will pay for physical damage to such "covered equipment."

**c.** Business Income

    (1) We will pay your actual loss of "business income" during the "period of restoration" that results directly from the necessary total or partial interruption of your business.

    (2) We will also pay any necessary expenses you incur during the "period of restoration" to reduce the amount of loss under this coverage. We will pay for such expenses to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.

    (3) We will consider the actual experience of your business before the "accident" and the probable experience you would have had without the "accident" in determining the amount of our payment.

**d.** Extra Expense

We will pay the reasonable and necessary "extra expense" to operate your business during the "period of restoration."

**e.** Service Interruption

We will pay for your loss and expense as defined under Business Income coverage and Extra Expense coverage that is the result of an "interruption of service."

**f.** Contingent Business Income

We will pay for your loss and expense as defined under Business Income and Extra Expense coverages that results from an "interruption of supply."

**g.** Perishable Goods

    (1) We will pay for physical damage to "perishable goods" due to "spoilage."

    (2) We will also pay for physical damage to "perishable goods" due to "spoilage" that is the result of an "interruption of service."

    (3) We will also pay for physical damage to "perishable goods" due to contamination from the release of refrigerant, including but not limited

to ammonia.

    (4) We will also pay any necessary expenses you incur during the "period of restoration" to reduce the amount of loss under this coverage. We will pay for such expenses to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.

**h.** Data Restoration

    (1) We will pay for your reasonable and necessary cost to research, replace or restore lost "data."

    (2) We will also pay for your loss and expense as defined under Business Income coverage and Extra Expense coverage that is the result of h.(1) above, if such coverage is otherwise applicable under this policy. This coverage is included within and subject to your Data Restoration limit.

**i.** Demolition

    (1) This coverage applies if an "accident" damages a building that is "covered property" and the loss is increased by an ordinance or law that:

        (a) Requires the demolition of a building that is otherwise reparable;

        (b) Is in force at the time of the "accident"; and

        (c) Is not addressed under Hazardous Substances coverage.

    (2) We will pay for the following additional costs to comply with such ordinance or law:

        (a) Your actual and necessary cost to demolish and clear the site of the undamaged parts of the building; and

        (b) Your actual and necessary cost to reconstruct the undamaged parts of the building.

    (3) As used in this coverage, additional costs mean those beyond what would have been payable under this Equipment Breakdown Coverage had no such ordinance or law been in force at the time of the "accident."

    (4) We will also pay for your loss and

expense as defined under Business Income coverage and Extra Expense coverage that is the result of I.(1) above, if such coverage is otherwise applicable under this policy. This coverage is included within and subject to your Demolition limit.

j. **Ordinance or Law**
  (1) This coverage applies if an "accident" damages a building that is "covered property" and the loss is increased by an ordinance or law that:
    (a) Regulates the construction or repair of buildings, including "building utilities";
    (b) Is in force at the time of the "accident"; and
    (c) Is not addressed under Demolition coverage or Hazardous Substances coverage.
  (2) We will pay for the following additional costs to comply with such ordinance or law:
    (a) Your actual and necessary cost to repair the damaged portions of the building;
    (b) Your actual and necessary cost to reconstruct the damaged portions of the building; and
    (c) Your actual and necessary cost to bring undamaged portions of the building into compliance with the ordinance or law.
  (3) As used in this coverage, additional costs mean those beyond what would have been payable under this Equipment Breakdown Coverage had no such ordinance or law been in force at the time of the "accident."
  (4) We will also pay for your loss and expense as defined under Business Income coverage and Extra Expense coverage that is the result of J.(1) above, if such coverage is otherwise applicable under this policy. This coverage is included within and subject to your Ordinance or Law limit.

k. **Expediting Expenses**
  With respect to your damaged "covered property," we will pay the reasonable extra cost to:

  (1) Make temporary repairs; and
  (2) Expedite permanent repairs or permanent replacement.

l. **Hazardous Substances**
  (1) We will pay for the additional cost to repair or replace "covered property" because of contamination by a "hazardous substance." This includes the additional expenses to clean up or dispose of such property. This does not include contamination of "perishable goods" by refrigerant, including but not limited to ammonia, which is addressed in Perishable Goods, A.2.g.(3).
  (2) As used in this coverage, additional costs mean those beyond what would have been payable under this Equipment Breakdown Coverage had no "hazardous substance" been involved.
  (3) We will also pay for your loss and expense as defined under Business Income coverage and Extra Expense coverage that is the result of I.(1) above, if such coverage is otherwise applicable under this policy. This coverage is included within and subject to your Hazardous Substances limit.

m. **Newly Acquired Locations**
  (1) You will notify us promptly of any newly acquired location that you have purchased or leased during the Policy Period.
  (2) All coverages applicable to any scheduled location under this Equipment Breakdown Coverage are extended to a newly acquired location that you have purchased or leased during the Policy Period.
  (3) This coverage begins at the time you acquire the property. As respects newly constructed properties, we will only consider them to be acquired by you when you have fully accepted the completed project.
  (4) This coverage ends when any of the following first occurs:
    (a) This Policy expires;
    (b) The number of days specified in the Declarations for this coverage expires after you acquire the location;

(c) The location is incorporated into the regular coverage of this policy; or

(d) The location is incorporated into the regular coverage of another Equipment Breakdown policy you have.

(5) If limits or deductibles vary by location, the highest limits and deductibles will apply to newly acquired locations. However, the most we will pay for loss, damage or expense arising from any "one accident" is the amount shown as the Newly Acquired Locations limit in the Declarations.

(6) We will charge you additional premium for newly acquired locations from the date you acquire the property.

n. **Course of Construction**

This coverage is automatically included and does not need to be indicated in the Declarations.

(1) You will notify us promptly of any expansion or rehabilitation of any location described in the Declarations.

(2) All coverages applicable to any location described in the Declarations are extended to an expansion or rehabilitation of that location.

(3) This coverage begins at the time you begin the expansion or rehabilitation project.

(4) We will charge you additional premium for newly acquired equipment from the date the equipment is installed.

## B. EXCLUSIONS

We will not pay for any excluded loss, damage or expense, even though any other cause or event contributes concurrently or in any sequence to the loss, damage or expense.

1. We will not pay for loss, damage or expense caused directly or indirectly by any of the following, whether or not caused by or resulting from an "accident."

a. **Fire and Explosion**

(1) Fire, including smoke from a fire.

(2) Combustion explosion. This includes, but is not limited to, a combustion explosion of any steam boiler or other fired vessel.

(3) Any other explosion, except as specifically provided in A.1.a.(3).

b. **Ordinance or Law**

The enforcement of, or change in, any ordinance, law, regulation, rule or ruling regulating or restricting repair, replacement, alteration, use, operation, construction or installation, except as specifically provided in A.2.i., j. and l. (Demolition, Ordinance or Law and Hazardous Substances coverages).

c. **Earth Movement**

Earth movement, whether natural or human-made, including but not limited to earthquake, shock, tremor, subsidence, landslide, rock fall, earth sinking, sinkhole collapse or tsunami.

d. **Nuclear Hazard**

Nuclear reaction, detonation or radiation, or radioactive contamination, however caused.

e. **War and Military Action**

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, political violence or action taken by governmental authority in hindering or defending against any of these.

f. **Water**

(1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

(2) Mudslide or mudflow; or

(3) Water that backs up or overflows from a sewer, drain or sump.

However, if electrical "covered equipment" requires drying out because of the above, we will pay for the amount you actually expend to dry out such equipment, subject to the applicable Property Damage limit and Direct Coverage deductible. We will not pay more than the Actual Cash Value of the affected electrical "covered equipment."

We will not pay to replace such equipment or for any other loss, damage or expense.

g. **Failure to Protect Property**

Your failure to use all reasonable means to protect "covered property" from damage following an "accident."

h. **Fines**

Fine, penalty or punitive damage.

i. **Mold**

Mold, fungus, mildew or yeast, including any spores or toxins created or produced by or emanating from such mold, fungus, mildew or yeast. This includes, but is not limited to, costs arising from clean-up, remediation, containment, removal or abatement of such mold, fungus, mildew, yeast, spores or toxins. However, this exclusion does not apply to "spoilage" of personal property that is "perishable goods" to the extent that such "spoilage" is covered under Perishable Goods coverage.

j. **Deliberate Acts**

The deliberate act of any person to cause damage or harm, including but not limited to vandalism, malicious mischief or sabotage.

2. We will not pay for an "accident" caused by or resulting from any of the following causes of loss:

a. Lightning.

b. Windstorm or Hail. However, this exclusion does not apply when:

   (1) "Covered equipment" located within a building or structure suffers an "accident" that results from wind-blown rain, snow, sand or dust; and

   (2) The building or structure did not first sustain wind or hail damage to its roof or walls through which the rain, snow, sand or dust entered.

c. Collision or any physical contact caused by a "vehicle." This includes damage by objects falling from aircraft. However, this exclusion does not apply to any unlicensed "vehicles" which you own or which are operated in the course of your business.

d. Riot or Civil Commotion.

e. Leakage or discharge of any substance from an automatic sprinkler system, including collapse of a tank that is part of the system.

f. Volcanic Action.

g. An electrical insulation breakdown test.

h. A hydrostatic, pneumatic or gas pressure test.

i. Water or other means intended to extinguish a fire, even when such an attempt is unsuccessful.

j. Elevator collision.

3. We will not pay for an "accident" caused by or resulting from any of the following perils, if such peril is a covered cause of loss under another coverage part or policy of insurance you have, whether collectible or not, and without regard to whether or not the other coverage part or policy of insurance provides the same coverage or scope of coverage as this policy.

a. Falling Objects.

b. Weight of Snow, Ice or Sleet.

c. Water Damage, meaning discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance containing water or steam.

d. Collapse.

e. Breakage of Glass.

f. Freezing caused by cold weather.

g. Discharge of molten material from equipment, including the heat from such discharged material.

4. Exclusions 2. and 3. do not apply if all of the following are true:

a. The excluded peril occurs away from any location described in the Declarations and causes an electrical surge or other electrical disturbance;

b. Such surge or disturbance is transmitted through utility service transmission lines to a described location;

c. At the described location, the surge or disturbance results in an "accident" to "covered equipment" that is owned or operated under the control of you or your landlord; and

d. The loss, damage or expense caused by such surge or disturbance is not a covered cause of loss under another coverage part or policy of insurance you have, whether collectible or not, and without regard to whether or not the other coverage part or policy of insurance provides the same coverage or scope of coverage as this policy.

5. With respect to Business Income, Extra Expense and Service Interruption coverages, we will also not pay for:

Includes copyright material of Insurance Services Office, Inc. with its permission.

a. Loss associated with business that would not or could not have been carried on if the "accident" had not occurred;

b. Loss caused by your failure to use due diligence and dispatch and all reasonable means to resume business;

c. That part of any loss that extends beyond or occurs after the "period of restoration." This includes, but is not limited to:

   (1) "Business income" that would have been earned after the "period of restoration," even if such loss is the direct result of the suspension, lapse or cancellation of a contract during the "period of restoration"; and

   (2) "Extra expense" to operate your business after the "period of restoration," even if such loss is contracted for and paid during the "period of restoration."

d. Any increase in loss resulting from an agreement between you and your customer or supplier. This includes, but is not limited to, contingent bonuses or penalties, late fees, demand charges, demurrage charges and liquidated damages.

6. With respect to Off Premises Property Damage coverage, Service Interruption coverage, Contingent Business Income coverage and paragraph (2) of Perishable Goods coverage, we will also not pay for an "accident" caused by or resulting from any of the perils listed in Exclusion 3. above, whether or not such peril is a covered cause of loss under another coverage part or policy of insurance you have.

7. With respect to Data Restoration coverage, we will also not pay to reproduce:

   a. Software programs or operating systems that are not commercially available; or

   b. "Data" that is obsolete, unnecessary or useless to you.

8. With respect to Demolition and Ordinance or Law coverages, we will also not pay for:

   a. Increased demolition or reconstruction costs until they are actually incurred; or

   b. Loss due to any ordinance or law that:

      (1) You were required to comply with before the loss, even if the building was undamaged; and

      (2) You failed to comply with;

      whether or not you were aware of such non-compliance.

C. LIMITS OF INSURANCE

Any payment made under this Equipment Breakdown Coverage will not be increased if more than one insured is shown in the Declarations or if you are comprised of more than one legal entity.

1. Equipment Breakdown Limit

   The most we will pay for loss, damage or expense arising from any "one accident" is the amount shown as the Equipment Breakdown Limit in the Declarations.

2. Coverage Limits

   a. The limit of your insurance under each of the coverages listed in A.2. from loss, damage or expense arising from any "one accident" is the amount indicated for that coverage in the Declarations. These limits are a part of, and not in addition to, the Equipment Breakdown Limit. If an amount of time is shown, coverage will continue for no more than that amount of time immediately following the "accident." If a coverage is shown as "Included," that coverage is provided up to the remaining amount of the Equipment Breakdown Limit. If no limit is shown in the Declarations for a coverage, or if a coverage is shown as Excluded in the Declarations, that coverage will be considered to have a limit of $0.

   b. If two or more coverage limits apply to the same loss or portion of a loss, we will pay only the smallest of the applicable limits for that loss or portion of the loss. This means that if:

      (1) You have a loss under one of the coverages listed in A.2.; and

      (2) All or part of the loss is not covered because the applicable coverage is Excluded or has a limit that is less than the amount of your loss,

      we will not pay the remaining amount of such loss under any other coverage.

EXAMPLE 1

Property Damage Limit: $7,000,000

Business Income Limit: $1,000,000

Newly Acquired Locations Limit: $500,000

There is an "accident" at a newly acquired location that results in a Property Damage loss of $200,000 and a Business Income loss of $800,000.

We will pay $500,000, because the entire loss is subject to the Newly Acquired Locations Limit of $500,000.

Includes copyright material of Insurance Services Office, Inc. with its permission.

HSB016

**EXAMPLE 2**

Property Damage Limit:  $7,000,000
Business Income Limit:  $500,000
Hazardous Substances Limit:  $25,000

There is an "accident" that results in a loss of $100,000. If no "hazardous substance" had been involved, the property damage loss would have been $10,000 and the business income loss would have been $20,000. The presence of the "hazardous substance" increased the loss by $70,000 (increasing the clean up and repair costs by $30,000 and increasing the business income loss by $40,000).

We will pay $55,000 ($10,000 property damage plus $20,000 business income plus $25,000 hazardous substances).

**D. DEDUCTIBLES**

1. **Deductibles for Each Coverage**

   a. Unless the Declarations indicate that your deductible is combined for all coverages, multiple deductibles may apply to any "one accident."

   b. We will not pay for loss, damage or expense under any coverage until the amount of the covered loss or damage exceeds the deductible amount indicated for that coverage in the Declarations. We will then pay the amount of loss, damage or expense in excess of the applicable deductible amount, subject to the applicable limit indicated in the Declarations.

   c. If deductibles vary by type of "covered equipment" and more than one type of "covered equipment" is involved in any "one accident," only the highest deductible for each coverage will apply.

   d. The following applies when a deductible is expressed as a function of the horsepower rating of a refrigerating or air conditioning system. If more than one compressor is used with a single system, the horsepower rating of the largest motor or compressor will determine the horsepower rating of the system.

2. **Direct and Indirect Coverages**

   a. Direct Coverages Deductibles and Indirect Coverages Deductibles may be indicated in the Declarations.

   b. Unless more specifically indicated in the Declarations:

      (1) Indirect Coverages Deductibles apply to Business Income and Extra Expense loss, regardless of where such coverage is provided in this Equipment

Breakdown Coverage; and

      (2) Direct Coverages Deductibles apply to all remaining loss, damage or expense covered by this Equipment Breakdown Coverage.

**EXAMPLE**

An "accident" results in covered losses as follows:

$100,000   Total Loss (all applicable coverages)

$  35,000   Business Income Loss (including $2,000 of business income loss payable under Data Restoration coverage)

$  5,000   Extra Expense Loss

In this case, the Indirect coverages loss totals $40,000 before application of the Indirect Coverage Deductible. The Direct coverages loss totals the remaining $60,000 before application of the Direct Coverage Deductible.

3. **Application of Deductibles**

   a. **Dollar Deductibles**

      We will not pay for loss, damage or expense resulting from any "one accident" until the amount of loss, damage or expense exceeds the applicable deductible or deductibles shown in the Declarations. We will then pay the amount of loss, damage or expense in excess of the applicable deductible or deductibles, subject to the applicable limits shown in the Declarations.

   b. **Time Deductibles**

      If a time deductible is shown in the Declarations, we will not be liable for any loss occurring during the specified number of hours or days immediately following the "accident." If a time deductible is expressed in days, each day shall mean twenty-four consecutive hours.

   c. **Multiple of Average Daily Value (ADV) Deductibles**

      If a deductible is expressed as a number times ADV, that amount will be calculated as follows:

      The ADV (Average Daily Value) will be the "business income" that would have been earned during the period of interruption had no "accident" occurred, divided by the number of working days in that period. The ADV applies to the "business income" value of the entire location, whether or not the loss affects the entire location. If more than one location is included in the valuation of the

loss, the ADV will be the combined value of all affected locations. For purposes of this calculation, the period of interruption may not extend beyond the "period of restoration."

The number indicated in the Declarations will be multiplied by the ADV as determined above. The result will be used as the applicable deductible.

**EXAMPLE**

Business is interrupted, partially or completely, for 10 working days. If there had been no "accident," the total "business income" at the affected location for those 10 working days would have been $5,000. The Indirect Coverages Deductible is 3 Times ADV.

$5,000 / 10 = $500 ADV

3 X $500 = $1,500 Indirect Coverages Deductible

d. Percentage of Loss Deductibles

If a deductible is expressed as a percentage of loss, we will not be liable for the indicated percentage of the gross amount of loss, damage or expense (prior to any applicable deductible or coinsurance) insured under the applicable coverage. If the dollar amount of such percentage is less than the indicated Minimum Deductible, the Minimum Deductible will be the applicable deductible.

**E. LOSS CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions:

1. Abandonment

There can be no abandonment of any property to us.

2. Brands and Labels

If branded or labeled merchandise that is "covered property" is damaged by an "accident," but retains a salvage value, you may, at your expense:

a. Stamp the word SALVAGE on the merchandise or its containers if the stamp will not physically damage the merchandise; or

b. Remove the brands or labels, if doing so will not physically damage the merchandise. You must re-label the merchandise or its containers to comply with the law.

We will pay for any reduction in value of the

salvage merchandise resulting from either of these two actions, subject to all applicable limits.

If a Brands and Labels Limit is shown on the Declarations, we will not pay more than the indicated amount for coverage under this Condition.

3. Coinsurance - Business Income Coverage

a. Unless otherwise shown in the Declarations, Business Income coverage is subject to coinsurance. This means that we will not pay the full amount of any "business income" loss if the "business income actual annual value" is greater than the "business income estimated annual value" at the affected location at the time of the "accident." Instead, we will determine the most we will pay using the following steps:

(1) Divide the "business income estimated annual value" by the "business income actual annual value" at the time of the "accident";

(2) Multiply the total amount of the covered loss of "business income" by the amount determined in paragraph (1) above;

(3) Subtract the applicable deductible from the amount determined in paragraph (2) above;

The resulting amount, or the Business Income Limit, whichever is less, is the most we will pay. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

b. Coinsurance applies separately to each insured location.

c. If you report a single "business income estimated annual value" for more than one location, without providing information on how that amount should be distributed among the locations, we will distribute the amount evenly among all applicable locations.

**EXAMPLE 1 (Underinsurance)**

When:

The "business income actual annual value" at the location of loss at the time of the "accident" is $200,000.

The "business income estimated annual value" shown in the Declarations for the location of loss is $100,000.

The actual loss of "business income" resulting from the "accident" is $40,000.

The Business Income limit is $100,000.

The Business Income deductible is $5,000.

Step 1: $100,000 / $200,000 = .5

Step 2: $40,000 x .5 = $20,000

Step 3: $20,000 - $5,000 = $15,000

The total "business income" loss recovery, after deductible, would be $15,000. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

We will also charge you an additional premium in recognition of the actual "business income annual value."

**EXAMPLE 2 (Adequate Insurance)**

When:

The "business income actual annual value" at the location of loss at the time of the "accident" is $200,000.

The "business income estimated annual value" shown in the Declarations for the location of loss is $200,000.

The actual loss of "business income" resulting from the "accident" is $40,000.

The Business Income limit is $100,000.

The Business Income deductible is $5,000.

Step 1: $200,000 / $200,000 = 1

Step 2: $40,000 x 1 = $40,000

Step 3: $40,000 - $5,000 = $35,000

The total "business income" loss recovery, after deductible, would be $35,000.

4.  **Coinsurance – Coverages other than Business Income**

Coverages other than Business Income may be subject to coinsurance if so indicated in the Declarations. If a Coinsurance percentage is shown in the Declarations, the following condition applies.

a.  We will not pay the full amount of any loss if the value of the property subject to the coverage at the time of the "accident" times the Coinsurance percentage shown for it in the Declarations is greater than the applicable limit.

Instead, we will determine the most we will pay using the following steps:

(1)  Multiply the value of the property subject to the coverage at the time of the "accident" by the Coinsurance percentage;

(2)  Divide the applicable limit by the amount determined in step (1);

(3)  Multiply the total amount of loss, before the application of any

deductible, by the amount determined in step (2); and

(4)  Subtract the deductible from the amount determined in step (3).

We will pay the amount determined in step (4) or the applicable limit, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

b.  Coinsurance applies separately to each insured location.

**EXAMPLE 1 (Underinsurance)**

When:

The actual value of "perishable goods" at the location of loss at the time of the "accident" is $200,000.

The Perishable Goods limit is $100,000 @ 80% coinsurance.

The loss under Perishable Goods coverage resulting from the "accident" is $60,000.

The Perishable Goods deductible is $5,000.

Step 1: $200,000 x 80% = $160,000

Step 2: $100,000/$160,000 = .625

Step 3: $60,000 x .625 = $37,500

Step 4: $37,500 - $5,000 = $32,500

The total Perishable Goods loss recovery, after deductible, would be $32,500. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**EXAMPLE 2 (Adequate Insurance)**

When:

The actual value of "perishable goods" at the location of loss at the time of the "accident" is $100,000.

The Perishable Goods limit is $100,000 @ 80% coinsurance.

The loss under Perishable Goods coverage resulting from the "accident" is $60,000.

The Perishable Goods deductible is $5,000.

Step 1: $100,000 x 80% = $80,000

Step 2: $100,000/$80,000 = 1.25

Coinsurance does not apply.

Step 3: $60,000 - $5,000 = $55,000

The total Perishable Goods loss recovery, after deductible, would be $55,000.

5.  **Defense**

We have the right, but are not obligated, to defend you against suits arising from claims of owners of property in your care, custody or control. When we do this, it will be at our expense.

Includes copyright material of Insurance Services Office, Inc. with its permission.

HSB019

6. **Duties In the Event of Loss or Damage**

You must see that the following are done in the event of loss or damage:

a. Give us a prompt notice of the loss or damage, including a description of the property involved.

b. You must reduce your loss, damage or expense, if possible, by:

   (1) Protecting property from further damage. We will not pay for your failure to protect property, as stated in Exclusion B.1.g.;

   (2) Resuming business, partially or completely at the location of loss or at another location;

   (3) Making up lost business within a reasonable amount of time. This includes working extra time or overtime at the location of loss or at another location. The reasonable amount of time does not necessarily end when the operations are resumed;

   (4) Using merchandise or other property available to you;

   (5) Using the property or services of others; and

   (6) Salvaging the damaged property.

c. Allow us a reasonable time and opportunity to examine the property and premises before repair or replacement is undertaken or physical evidence of the "accident" is removed. But you must take whatever measures are necessary for protection from further damage.

d. Make no statement that will assume any obligation or admit any liability, for any loss, damage or expense for which we may be liable, without our consent.

e. Promptly send us any legal papers or notices received concerning the loss, damage or expense.

f. As often as may be reasonably required, permit us to inspect your property, premises and records. Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

g. If requested, permit us to examine you and any of your agents, employees and representatives under oath. We may examine any insured under oath while not in the presence of any other insured. Such

examination:

   (1) May be at any time reasonably required;

   (2) May be about any matter relating to this insurance, your loss, damage or expense, or your claim, including, but not limited to, your books and records; and

   (3) May be recorded by us by any methods we choose.

h. Send us a signed, sworn proof of loss containing the information we request. You must do this within 60 days after our request.

i. Cooperate with us in the investigation and settlement of the claim.

7. **Errors and Omissions**

a. We will pay your loss covered by this Equipment Breakdown coverage if such loss is otherwise not payable solely because of any of the following:

   (1) Any error or unintentional omission in the description or location of property as insured under this policy;

   (2) Any failure through error to include any premises owned or occupied by you at the inception of this policy; or

   (3) Any error or unintentional omission by you that results in cancellation of any premises insured under this policy.

b. No coverage is provided as a result of any error or unintentional omission by you in the reporting of values or the coverage you requested.

c. It is a condition of this coverage that such errors or unintentional omissions shall be reported and corrected when discovered. The policy premium will be adjusted accordingly to reflect the date the premises should have been added had no error or omission occurred.

d. If an Errors and Omissions Limit is shown on the Declarations, we will not pay more than the indicated amount for coverage under this Condition.

8. **Proving Your Loss**

It is your responsibility, at your own expense, to provide documentation to us:

a. Demonstrating that the loss, damage or expense is the result of an "accident" covered under this Equipment Breakdown

Coverage; and

b.   Calculating the dollar amount of the loss, damage and expense that you claim is covered.

Your responsibility in 8.a. above is without regard to whether or not the possible "accident" occurred at your premises or involved your equipment.

9.   **Salvage and Recoveries**

When, in connection with any loss under this Equipment Breakdown Coverage, any salvage or recovery is received after the payment for such loss, the amount of the loss shall be refigured on the basis on which it would have been settled had the amount of salvage or recovery been known at the time the loss was originally determined. Any amounts thus found to be due either party from the other shall be paid promptly.

10.  **Valuation**

We will determine the value of "covered property" as follows:

a.   Except as specified otherwise, our payment for damaged "covered property" will be the smallest of:

   (1)   The cost to repair the damaged property;

   (2)   The cost to replace the damaged property on the same site; or

   (3)   The amount you actually spend that is necessary to repair or replace the damaged property.

b.   The amount of our payment will be based on the most cost-effective means to replace the function, capacity and remaining useful life of the damaged property. This may include the use of generic, used or reconditioned parts, equipment or property.

c.   Except as described in d. below, you must pay the extra cost of replacing damaged property with property of a better kind or quality or of a different size or capacity.

d.   **Environmental, Safety and Efficiency Improvements**

If "covered equipment" requires replacement due to an "accident," we will pay your additional cost to replace with equipment that we agree is better for the environment, safer for people or more energy efficient than the equipment being replaced, subject to the following conditions:

   (1)   We will not pay more than 125% of

what the cost would have been to replace with like kind and quality;

   (2)   We will not pay to increase the size or capacity of the equipment;

   (3)   This provision only applies to Property Damage coverage;

   (4)   This provision does not increase any of the applicable limits;

   (5)   This provision does not apply to any property valued on an Actual Cash Value basis; and

   (6)   This provision does not apply to the replacement of component parts.

e.   The following property will be valued on an Actual Cash Value basis:

   (1)   Any property that does not currently serve a useful or necessary function for you;

   (2)   Any "covered property" that you do not repair or replace within 24 months after the date of the "accident"; and

   (3)   Any "covered property" for which Actual Cash Value coverage is specified in the Declarations.

Actual Cash Value includes deductions for depreciation.

f.   If any one of the following conditions is met, property held for sale by you will be valued at the sales price as if no loss or damage had occurred, less any discounts and expenses that otherwise would have applied:

   (1)   The property was manufactured by you;

   (2)   The sales price of the property is less than the replacement cost of the property; or

   (3)   You are unable to replace the property before its anticipated sale.

g.   Except as specifically provided for under Data Restoration coverage, "data" and "media" will be valued on the following basis:

   (1)   For mass-produced and commercially available software, at the replacement cost.

   (2)   For all other "data" and "media," at the cost of blank "media" for reproducing the records. We will not pay for "data" representing financial records based on the face value of such records.

Includes copyright material of Insurance Services Office, Inc. with its permission.

HSB021

h. Air conditioning or refrigeration equipment that utilizes a refrigerant containing CFC (chlorofluorocarbon) substances will be valued at the cost to do the least expensive of the following:

(1) Repair or replace the damaged property and replace any lost CFC refrigerant;

(2) Repair the damaged property, retrofit the system to accept a non-CFC refrigerant and charge the system with a non-CFC refrigerant; or

(3) Replace the system with one using a non-CFC refrigerant.

In determining the least expensive option, we will include any associated Business Income or Extra Expense loss. If option (2) or (3) is more expensive than (1), but you wish to retrofit or replace anyway, we will consider this better for the environment and therefore eligible for valuation under paragraph d., Environmental, Safety and Efficiency Improvements. In such case, E.10.d.(1) is amended to read: "We will not pay more than 125% of what the cost would have been to repair or replace with like kind and quality."

## F. ADDITIONAL CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

1. **Additional Insured**

If a person or organization is designated in this Equipment Breakdown Coverage as an additional Insured, we will consider them to be an insured under this Equipment Breakdown Coverage only to the extent of their interest in the "covered property."

2. **Bankruptcy**

The bankruptcy or insolvency of you or your estate will not relieve you or us of any obligation under this Equipment Breakdown Coverage.

3. Concealment, Misrepresentation or Fraud

We will not pay for any loss and coverage will be void if you or any additional insured at any time:

a. Intentionally cause or allow loss, damage or expense in order to collect on insurance; or

b. Intentionally conceal or misrepresent a material fact concerning:

(1) This Equipment Breakdown Coverage;

(2) The "covered property";

(3) Your interest in the "covered property"; or

(4) A claim under this Equipment Breakdown Coverage.

4. Jurisdictional Inspections

It is your responsibility to comply with any state or municipal boiler and pressure vessel regulations. If any "covered equipment" that is "covered property" requires inspection to comply with such regulations, at your option we agree to perform such inspection.

5. Legal Action Against Us

No one may bring a legal action against us under this Equipment Breakdown Coverage unless:

a. There has been full compliance with all the terms of this Equipment Breakdown Coverage; and

b. The action is brought within two years after the date of the "accident" or

c. We agree in writing that you have an obligation to pay for damage to "covered property" of others or until the amount of that obligation has been determined by final judgment or arbitration award. No one has the right under this policy to bring us into an action to determine your liability.

6. Liberalization

If we adopt any standard form revision for general use that would broaden the coverage under this Equipment Breakdown Coverage without additional premium, the broadened coverage will apply to this Equipment Breakdown Coverage commencing on the date that such revision becomes effective in the jurisdiction where the "accident" occurs.

7. Loss Payable

a. We will pay you and the loss payee shown in the Declarations for loss covered by this Equipment Breakdown Coverage, as interests may appear. The insurance covers the interest of the loss payee unless the loss results from conversion, secretion or embezzlement on your part or on the part of the loss payee.

b. We may cancel the policy as allowed by the Cancellation Condition. Cancellation ends this agreement as to the loss payee's interest. If we cancel, we will mail you and the loss payee the same advance notice.

c. If we make any payment to the loss payee,

Includes copyright material of Insurance Services Office, Inc. with its permission.

HSB022

we will obtain their rights against any other party.

**8. Maintaining Your Property and Equipment**

It is your responsibility to appropriately maintain your property and equipment. We will not pay your costs to maintain, operate, protect or enhance your property or equipment, even if such costs are to comply with our recommendations or prevent loss, damage or expense that would be covered under this policy.

**9. Mortgage Holders**

a. The term mortgage holder includes trustee.

b. We will pay for direct damage to "covered property" due to an "accident" to "covered equipment" to you and each mortgage holder shown in the Declarations in their order of precedence, as interests in the "covered property" may appear.

c. The mortgage holder has the right to receive loss payment even if the mortgage holder has started foreclosure or similar action on the "covered property."

d. If we deny your claim because of your acts or because you have failed to comply with the terms of this Equipment Breakdown Coverage, the mortgage holder will still have the right to receive loss payment, provided the mortgage holder does all of the following:

(1) Pays any premium due under this Equipment Breakdown Coverage at our request if you have failed to do so;

(2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so;

(3) Has notified us of any change in ownership or material change in risk known to the mortgage holder; and

(4) Has complied with all other terms and conditions of this Policy.

All of the terms of this Equipment Breakdown Coverage will then apply directly to the mortgage holder.

e. If we pay the mortgage holder for any loss and deny payment to you because of your acts or because you have failed to comply with the terms of this Equipment Breakdown Coverage:

(1) The mortgage holder's right under the mortgage will be transferred to us to the extent of the amount we pay; and

(2) The mortgage holder's right to recover the full amount of the mortgage holder's claim will not be impaired.

At our option, we may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

f. If we cancel this policy, we will give written notice to the mortgage holder at least:

(1) 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

(2) 30 days before the effective date of cancellation if we cancel for any other reason.

g. If we elect not to renew this policy, we will give written notice to the mortgage holder at least 10 days before the expiration date of this policy.

h. If we suspend coverage, it will also be suspended as respects the mortgage holder. We will give written notice of the suspension to the mortgage holder.

**10. Other Insurance**

If there is other insurance that applies to the same loss, damage or expense, this Equipment Breakdown Coverage shall apply only as excess insurance after all other applicable insurance has been exhausted.

**11. Policy Period, Coverage Territory**

Under this Equipment Breakdown Coverage:

a. The "accident" must occur during the Policy Period, but expiration of the policy does not limit our liability.

b. The "accident" must occur within the following Coverage Territory:

(1) The United States of America (including its territories and possessions);

(2) Puerto Rico; and

(3) Canada.

**12. Privilege to Adjust with Owner**

In the event of loss, damage or expense involving property of others in your care, custody or control, we have the right to settle the loss, damage or expense with respect to such property with the owner of the property. Settlement with owners of that property will satisfy any claim of yours.

Includes copyright material of Insurance Services Office, Inc. with its permission.

6671 10/2002

HSB023

13. **Suspension**

Whenever "covered equipment" is found to be in, or exposed to, a dangerous condition, any of our representatives may immediately suspend the insurance against loss from an "accident" to that "covered equipment." This can be done by delivering or mailing a written notice of suspension to:

a. Your last known address; or

b. The address where the "covered equipment" is located.

Once suspended in this way, your insurance can be reinstated only by an endorsement for that "covered equipment."

If we suspend your insurance, you will get a pro rata refund of premium for that "covered equipment" for the period of suspension. But the suspension will be effective even if we have not yet made or offered a refund.

14. **Transfer of Rights of Recovery Against Others to Us**

If any person or organization to or for whom we make payment under this Equipment Breakdown Coverage has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

a. Prior to an "accident."

b. After an "accident" only if, at time of the "accident," that party is one of the following:

   (1) Someone insured by this Policy; or

   (2) A business firm:

      (a) Owned or controlled by you; or

      (b) That owns or controls you.

G. **DEFINITIONS**

1. **"Accident"**

   a. "Accident" is defined in A.1.a.

   b. None of the following is an "accident," however caused and without regard to whether such condition or event is normal and expected or unusual and unexpected:

      (1) Depletion, deterioration, rust, corrosion, erosion, settling or wear and tear;

      (2) Any gradually developing condition;

      (3) Any defect, programming error, programming limitation, computer virus, malicious code, loss of "data,"

loss of access, loss of use, loss of functionality or other condition within or involving "data" or "media" of any kind;

      (4) Contamination by a "hazardous substance"; or

      (5) Misalignment, miscalibration, tripping off-line, or any condition which can be corrected by resetting, tightening, adjusting or cleaning, or by the performance of maintenance.

2. **"Boilers and Vessels"** means:

   a. Boilers;

   b. Steam piping;

   c. Piping that is part of a closed loop used to conduct heat from a boiler;

   d. Condensate tanks; and

   e. Unfired vessels which, during normal usage, operate under vacuum or pressure, other than the weight of contents.

   This term does not appear elsewhere in this coverage form, but may appear in the Declarations.

3. **"Building Utilities"** means "covered equipment" permanently mounted on or in a building and used to provide any of the following services within the building: heating, ventilating, air conditioning, electrical power, hot water, elevator or escalator services, natural gas service or communications. "Building utilities" does not include personal property or equipment used in manufacturing or processing.

4. **"Buried Vessels or Piping"** means any piping or vessel buried or encased in the earth, concrete or other material, whether above or below grade, or in an enclosure which does not allow access for inspection and repair.

5. **"Business Income"** means the sum of:

   a. The Net Income (net profit or loss before income taxes) that would have been earned or incurred; and

   b. Continuing normal and necessary operating expenses incurred, including employee payroll.

6. **"Business Income Actual Annual Value"** means the "business income" for the current fiscal year that would have been earned had no "accident" occurred.

   In calculating the "business income actual annual value," we will take into account the actual experience of your business before the "accident" and the probable experience you would have had without the "accident."

7. "Business Income Estimated Annual Value" means the anticipated "business income" reported to us and shown in the Declarations. If no value is shown in the Declarations, the "business income estimated annual value" will be the most recent report of anticipated "business income" values on file with us.

8. "Covered Equipment"

   a. "Covered Equipment" is defined in A.1.b.

   b. None of the following is "covered equipment":

      (1) Structure, including but not limited to the structural portions of buildings and towers, scaffolding, and any air supported enclosure;

      (2) Foundation;

      (3) Cabinet, compartment, conduit or ductwork;

      (4) Insulating or refractory material;

      (5) "Buried vessels or piping";

      (6) Waste, drainage or sewer piping;

      (7) Piping, valves or fittings forming a part of a sprinkler or fire suppression system;

      (8) Water piping that is not part of a closed loop used to conduct heat or cooling from a boiler or a refrigeration or air conditioning system;

      (9) "Vehicle" or any equipment mounted on a "vehicle";

      (10) Satellite, spacecraft or any equipment mounted on a satellite or spacecraft;

      (11) Dragline, excavation or construction equipment;

      (12) Equipment manufactured by you for sale; or

      (13) "Data."

9. "Covered Property"

   a. "Covered Property" means property that you own or property that is in your care, custody or control and for which you are legally liable. Such property must be at a location described in the Declarations except as provided under Off Premises Property Damage coverage.

   b. None of the following is "covered property":

      (1) Accounts, bills, currency, deeds or other evidences of debt, money, notes or securities;

      (2) Fine arts, jewelry, furs or precious stones;

      (3) Precious metal, unless forming a part of "covered equipment";

      (4) Animals;

      (5) Contraband, or property in the course of illegal transportation or trade;

      (6) Land (including land on which the property is located), water, trees, growing crops or lawns; or

      (7) Shrubs or plants, unless held indoors for retail sale.

10. "Data" means information or instructions stored in digital code capable of being processed by machinery.

11. "Electrical Generating Equipment"

    a. "Electrical Generating Equipment" means equipment which converts any other form of energy into electricity. This includes, but is not limited to, the following:

       (1) Boilers used primarily to provide steam for one or more turbine-generator units;

       (2) Turbine-generators (including steam, gas, water or wind turbines);

       (3) Engine-generators;

       (4) Fuel cells or other alternative electrical generating equipment;

       (5) Electrical transformers, switchgear and power lines used to convey the generated electricity; and

       (6) Associated equipment necessary for the operation of any of the equipment listed in (1) through (5) above.

    b. "Electrical Generating Equipment" does not mean:

       (1) Elevator or hoist motors that generate electricity when releasing cable; or

       (2) Equipment intended to generate electricity solely on an emergency, back-up basis.

    This term does not appear elsewhere in this coverage form, but may appear in the Declarations.

12. "Extra Expense" means the additional cost you incur to operate your business over and above the cost that you normally would have incurred to operate your business during the same period had no "accident" occurred.

13. "Hazardous Substance" means any substance that is hazardous to health or has been declared to be hazardous to health by a governmental agency.

14. "Interruption of Service"

    a. "Interruption of Service" means a failure or

disruption of the normal supply of any of the Covered Services listed in b. below, when such failure or disruption is caused by an "accident" to "covered equipment," subject to the conditions listed in c. through f. below.

b. Covered Services are electrical power, waste disposal, air conditioning, refrigeration, heating, natural gas, compressed air, water, steam, Internet access, telecommunications services, wide area networks and data transmission.

c. The "covered equipment" must either be:

(1) Owned by a company with whom you have a contract to supply you with one of the Covered Services; or

(2) Used to supply you with one of the Covered Services and located within one mile of a location described in the Declarations.

d. If a Service Interruption Distance Limitation is indicated in the Declarations, the "covered equipment" suffering the "accident" must be located within the indicated distance of any location described in the Declarations.

e. If an Interruption of Service Waiting Period is indicated in the Declarations, no failure or disruption of service will be considered to qualify as an "interruption of service" until the failure or disruption exceeds the indicated number of hours immediately following the "accident."

f. "Interruption of service" does not include any failure or disruption, whether or not arising from or involving an "accident," in which a supplier could have continued to provide service to the location but chose for any reason to reduce or discontinue service.

15. "Interruption of Supply"

a. "Interruption of supply" means a failure or disruption of the normal supply of any of the Covered Contingencies listed below, when such failure or disruption is caused by an "accident" to "covered equipment" that is located at a Contingent Business Income supplier or receiver location indicated in the Declarations. If no Contingent Business Income supplier or receiver location is indicated in the Declarations, the "covered equipment" must be owned by a supplier from whom you have received the Covered Contingency for at least six months prior to

the "accident" or a receiver to whom you have supplied the Covered Contingency for at least six months prior to the "accident."

b. Covered Contingencies are raw materials, intermediate products, finished products, packaging materials and product processing services.

16. "Media" means material on which "data" is recorded, such as magnetic tapes, hard disks, optical disks or floppy disks.

17. "One Accident" means all "accidents" occurring at the same time from the same event. If an "accident" causes other "accidents," all will be considered "one accident."

18. "Ordinary Payroll" means the Payroll Expenses associated with all employees other than executives, department managers and employees under contract.

As used above, Payroll Expenses means all payroll, employee benefits directly related to payroll, FICA payments you pay, union dues you pay and workers compensation premiums. "Ordinary payroll" does not include pensions or directors fees.

This term does not appear elsewhere in this coverage form, but may appear in the Declarations.

19. "Period of Restoration" means the period of time that begins at the time of the "accident" and continues until the earlier of:

a. The date the physical damage to "covered equipment" is repaired or replaced; or

b. The date on which such damage could have been repaired or replaced with the exercise of due diligence and dispatch,

plus the number of days, if any, shown in the Declarations for Extended Period of Restoration.

20. "Perishable Goods" means any "covered property" subject to deterioration or impairment as a result of a change of conditions, including but not limited to temperature, humidity or pressure.

21. "Production Machinery" means any machine or apparatus that processes or produces a product intended for eventual sale. This includes all component parts of such machine or apparatus and any other equipment used exclusively with such machine or apparatus.

This term does not appear elsewhere in this coverage form, but may appear in the Declarations.

22. "Spoilage" means any detrimental change in state. This includes but is not limited to thawing

of frozen goods, warming of refrigerated goods, freezing of fresh goods, solidification of liquid or molten material and chemical reactions to material in process.

23. "Vehicle" means any machine or apparatus that is used for transportation or moves under its own power. "Vehicle" includes, but is not limited to, car, truck, bus, trailer, train, aircraft, watercraft, forklift, bulldozer, tractor or harvester.

However, any property that is stationary, permanently installed at a covered location and that receives electrical power from an external power source will not be considered a "vehicle."

Includes copyright material of Insurance Services Office, Inc. with its permission.

HSB028

# HSB Green Equipment Breakdown Endorsement

Named Insured:
Hull Permanent Sewer Commission

Policy Number .............. FBP4935156

Effective Date ............... 03/04/2012
Issue Date...................... 02/08/2012

This endorsement changes the policy. Please read it carefully.

The EQUIPMENT BREAKDOWN COVERAGE FORM 6671 is modified as follows:

A. The following is added to Section A. COVERAGE, 2. Coverages Provided:

**Green**

(1) With respect to "covered property," we will pay for additional costs you incur:

    (a) To repair damaged property using equipment, materials and service firms required or recommended by a "recognized environmental standards program," if repair is the least expensive option as described in Section E. LOSS CONDITIONS, 10. Valuation, paragraph a.;

    (b) To replace damaged property using equipment, materials and service firms required or recommended by a "recognized environmental standards program," if replacement is the least expensive option as described in Section E. LOSS CONDITIONS, 10. Valuation, paragraph a.;

    (c) To dispose of damaged property or equipment, if practicable, through a recycling process; and

    (d) To flush out reconstructed space with up to 100% outside air using new filtration media.

    As used in this coverage, additional costs mean those beyond what would have been payable under this Equipment Breakdown Coverage in the absence of this Green coverage.

(2) With respect to any building that is "covered property" which, at the time of the "accident," was certified by a "recognized environmental standards program," we will pay for costs you incur:

    (a) To prevent a lapse of such certification;

    (b) To reinstate the certification or replace it with an equivalent certification;

    (c) For an engineer authorized by a "recognized environmental standards program" to oversee the repair or replacement of the damaged "covered property"; and

    (d) For a Professional Engineer to commission or recommission your damaged mechanical, electrical, or electronic building systems.

(3) We will also pay for your loss and expense as defined under Business Income coverage and Extra Expense coverage that is the result of (1) and (2) above, if such coverage is otherwise applicable under this policy. This coverage is included within and subject to your Green limit.

(4) This Green coverage is subject to the following provisions:

    (a) This coverage applies in addition to any coverage that may apply under Section E. LOSS CONDITIONS, 10. Valuation, paragraph d. Environmental, Safety and Efficiency Improvements, or any other applicable coverage.

HSB029

# Terrorism Risk Insurance Act Disclosure

Named Insured:
Hull Permanent Sewer Commission

Policy Number ............... FBP4935156

Effective Date ................ 03/04/2012
Issue Date...................... 02/08/2012

This endorsement is attached to and made part of your policy in response to the disclosure requirements of the Terrorism Risk Insurance Act, as amended.

**Applicable Premium**

Your policy premium includes the following premium charge for losses resulting from certified acts of terrorism as defined in the Terrorism Risk Insurance Act, as amended: $0

**Informational Notice**

The following notice does not change your coverage under this policy, but is provided for your information in compliance with the Terrorism Risk Insurance Act, as amended.

Under the Terrorism Risk Insurance Act, as amended, we must offer you coverage for losses arising from certified acts of terrorism as defined in Section 102(1)(A)(iv) of the Act. This policy does not contain a terrorism exclusion. The actual coverage provided by the policy for acts of terrorism, as is true for all coverages, is subject to the terms, conditions, exclusions, limits, and other provisions of your policy, any endorsements to your policy, and generally applicable rules of law.

Any coverage provided by this policy for losses arising from certified acts of terrorism is partially reinsured by the United States Government, Department of the Treasury under a formula established by federal law. Under this formula, the United States will pay 85 percent of covered terrorism losses exceeding a statutorily established deductible paid by the insurance company providing the coverage. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act, as amended, exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act, as amended, exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, as amended, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

BND  BBTRIA  01/2008                                                          Page 1 of 1

HSB030

HSB031

# Massachusetts Changes

This endorsement changes the policy.  Please read it carefully.

These changes apply only to locations covered by the policy that are in the Commonwealth of Massachusetts.

**A. EXCLUSION B.1.i. Mold** is replaced by the following:

Mold, fungus, mildew or yeast, including any spores or toxins created or produced by or emanating from such mold, fungus, mildew or yeast.  This includes, but is not limited to, costs arising from clean-up, remediation, containment, removal or abatement of such mold, fungus, mildew, yeast, spores or toxins. However, this exclusion does not apply to "spoilage" of personal property that is "perishable goods" to the extent that such "spoilage" is covered under Perishable Goods coverage, A.2.g.

This exclusion does not apply to the extent that coverage is provided in B, below.

**B. The following is added to A.2. Coverages Provided:**

**o.  Mold**

(1) We will pay for the additional cost to repair or replace "covered property" because of contamination by mold, fungus, mildew or yeast, including any spores or toxins created or produced by or emanating from such mold, fungus, mildew or yeast. This includes the additional expenses to clean up or dispose of such property. This does not include "spoilage" of "perishable goods," which is addressed in Perishable Goods coverage, A.2.g.

(2) As used in this coverage, additional costs mean those beyond what would have been payable under this Equipment Breakdown Coverage had no mold, fungus, mildew, yeast, spores or toxins been involved.

(3) We will also pay for your loss and expense as defined under Business Income coverage and Extra Expense coverage that is the result of o.(1) above, if such coverage is otherwise applicable under this policy. This coverage is included within and subject to the aggregate mold limit defined below.

(4) We will also pay the cost of testing performed after repair or replacement of the damaged "covered property" is completed only to the extent that there is reason to believe there is the presence of mold, fungus, mildew, yeast, spores or toxins.

(5) This Mold coverage is subject to an aggregate mold limit of $15,000. This amount is separate from and in addition to the Equipment Breakdown Limit. The aggregate mold limit is the most we will pay under this coverage for the total of all loss, damage or expense arising out of all "accidents" which take place during any one policy period, even if such mold, fungus, mildew, yeast, spore or toxin continues to be present or active, or recurs, in a later policy period.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

FBP MA 01/2010

Page 1 of 1

HSB032

HSB033